RENDERED:  AUGUST 21, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000608-MR

DALE CORNATZER                                               APPELLANT


APPEAL FROM BRECKINRIDGE CIRCUIT COURT
v.         HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 04-CI-00075


ANGELA CORNATZER                                               APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; TAYLOR AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Dale Cornatzer ("Appellant") appeals from an order of the Breckinridge Circuit Court addressing his motion to enforce a property settlement agreement ("the Agreement") entered into with his former wife Angela Cornatzer ("Appellee").  Appellant argues that the circuit court improperly interpreted the Agreement; that if the Agreement is ambiguous it should be

construed against the drafter; that there was no meeting of the minds; and that the interpretation sought by Appellee is unconscionable. For the reasons addressed below, we find no error and affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

The parties were divorced by way of a decree of dissolution of marriage entered on November 4, 2004. The decree incorporated the Agreement, which disposed of various matters including real property, custody, child support, and retirement funds. Notably, Paragraph 10[1] which is titled "PENSIONS/ RETIREMENTS/401K/459/SAVINGS ACCOUNTS" states,

> The parties agree that the Petitioner [Appellant] will pay the Respondent [Appellee] $700.00 per month until the last child graduates from high school or is eighteen (18) years of age and is not in school. The Petitioner shall then pay the Respondent 50% of his hazardous duty pay and 38% of the non-hazardous duty pay. When the Respondent retires Mr. Cornatzer will be entitled to his marital share and it shall be credited against sums paid to the Respondent.

Pursuant to the Agreement, Appellant began paying to Appellee the sum of $700 per month in representing Appellee's marital share of Appellant's retirement proceeds. Appellee retired in June 2018, after which the parties, through counsel, discussed their ongoing obligations. Appellee asserted that Appellant was required to pay to her 50% of his hazardous duty pay and 38% of

---

[1] Appellant refers to this as "Paragraph X."

the non-hazardous duty pay, subject to a credit representing Appellant's share of Appellee's retirement pay. Appellant maintained that this was not what the Agreement required, nor was it reasonable or conscionable.

On October 31, 2018, Appellant filed a motion to enforce the Agreement on the issue of retirement proceeds. A hearing was conducted on December 16, 2018, after which the circuit court rendered an order interpreting Paragraph 10. The court determined that the Agreement gave Appellee 50% of Appellant's hazardous duty pay and 38% of his non-hazardous duty pay, minus a credit for Appellant's share of Appellee's retirement pay. The court noted that Appellee filed an affidavit that her marital share of Appellant's retirement is $802.17, with Appellant's share of Appellee's retirement being $276.00. The court accepted these sums as accurate and awarded to Appellee the amount of $525.57 per month representing $802.17 minus $276.60.[2] It determined that this obligation continued as long as Appellee received retirement income. This appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant argues that the Breckinridge Circuit Court erred in its interpretation of Paragraph 10. He maintains that the plain meaning of this language provides that upon Appellee's retirement, Appellant's obligation to pay

---

[2] The order on appeal incorrectly states that Appellant's share of Appellee's monthly retirement payment is $276.00. The correct amount is $276.60.

to Appellee her share of his retirement proceeds terminates, and that his marital share of Appellee's retirement is then credited against the sums he previously paid to Appellee. Appellant argues that one could not reasonably conclude from this language that his obligation to pay to Appellee a portion of his retirement continues in perpetuity. Rather, the language at issue, he argues, terminated his obligation at the time of Appellee's retirement. In support of this interpretation, Appellant directs our attention to the following sentence he claims disposes of any alternate interpretations: "[W]hen the . . . [Appellee] retires the . . . [Appellant] will be entitled to his marital share and it shall be credited against sums paid to the . . . [Appellee]." Appellant notes that the term "paid" is past tense and must necessarily refer to payments previously made to Appellee. It cannot, he argues, refer to future payments to Appellee as the language "to be paid" is not found in Paragraph 10. In sum, Appellant contends that his payment obligation terminated at Appellee's retirement, that he is entitled to a marital share of her retirement to be credited against sums he previously paid, and that the Breckinridge Circuit Court erred in failing to so conclude.

"The terms of a settlement agreement set forth in a decree of dissolution of marriage are enforceable as contract terms. [Kentucky Revised Statute (KRS)] 403.180(5). The construction and interpretation of a contract is a matter of law and is reviewed under the *de novo* standard." *Money v. Money*, 297

S.W.3d 69, 71 (Ky. App. 2009) (citing *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998)). "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence. . . . The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Money*, 297 S.W.3d at 72 (citations and internal quotation marks omitted).

The primary question before us is whether the circuit court correctly interpreted the Agreement as continuing Appellant's obligation as long as he receives retirement income. We must answer this question in the affirmative. The Agreement expressly states at Paragraph 8 that the parties waived any entitlement to maintenance, and as Paragraph 10 is titled "PENSIONS/RETIREMENTS/401K/ 459/SAVINGS ACCOUNTS," we may reasonably construe this language as disposing of the parties' marital property. While the parties are entitled to dispose of their marital property in any way they see fit so long as the Agreement is not unconscionable, *id.*, the underlying statutory scheme for the division of marital property centers on a division "in just proportions." KRS 403.190(1); KRS 403.180(3). All property acquired by either spouse after the marriage is presumed to be marital property. KRS 403.190(3). If the parties sought to mirror the statutory scheme, Appellant's obligation to distribute Appellee's share of

Appellant's retirement income would necessarily continue as long as he was receiving such income.

Irrespective of the statutory scheme, from which the parties may agree to depart, nothing in Paragraph 10 can properly be interpreted as terminating Appellant's obligation when Appellee retires. Notably, there is no language in Paragraph 10, express or implied, which terminates Appellee's right to her share of this marital asset nor his right to hers. In contrast, the preceding sentence addressing a $700 monthly payment to Appellee does expressly set forth a fixed termination date, *i.e.*, when the minor child graduates or reaches the age of majority. The parties could have, but did not, incorporate similar express terms terminating Appellant's obligation to pay Appellee her share of his ongoing retirement proceeds.

Under the terms of the Agreement, the parties distributed their fixed marital assets such as the marital home, vehicles, and personal property. Due to the indeterminate nature of their retirement assets, however, and because the parties could not know if they would receive retirement proceeds for one year or 30 years after the dissolution, the distribution of those assets to the parties must necessarily occur on an ongoing basis. Further, Appellant acknowledges that Appellee's obligation to credit to him a portion of her retirement assets is also ongoing. As there is no language in Paragraph 10 terminating Appellee's right to a

division of Appellant's retirement proceeds on an ongoing basis, we find no error in the Breckinridge Circuit Court's conclusion on this issue.

Appellant goes on to argue that the rule of *contra proferentem*, *i.e.*, that ambiguities in a contract are construed against its drafter, required the circuit court to adopt his interpretation of Paragraph 10 over the interpretation forwarded by the Appellee. *See McMullin v. McMullin*, 338 S.W.3d 315 (Ky. App. 2011). In the alternative, he contends that there was no meeting of the minds sufficient to form a contract, and that the interpretation asserted by the Appellee is unconscionable. We are not persuaded by these arguments. Paragraph 10 is not ambiguous or unconscionable. It states in clear terms that Appellant shall pay the Appellee 50% of his hazardous duty pay and 38% of the non-hazardous duty pay, subject to a credit for his share of Appellee's retirement income. If the distribution of retirement assets had been accomplished by the circuit court pursuant to KRS Chapter 403 and the "just proportions" standard applied, rather than a distribution agreed to by the parties, the result likely would have been substantially similar. We find no error.

## CONCLUSION

The Breckinridge Circuit Court properly interpreted Paragraph 10 of the Agreement as requiring ongoing payments to Appellee representing a portion of Appellant's retirement income, subject to a credit for Appellant's entitlement to

a portion of Appellee's retirement income. Paragraph 10 disposes of marital assets in a manner substantially similar to the scheme set out in KRS Chapter 403, does not contain a termination date, and is not ambiguous or unconscionable. For the foregoing reasons, we affirm the order of the Breckinridge Circuit Court.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Hollyn Richardson | Brett Butler |
| Louisville, Kentucky | Hardinsburg, Kentucky |